United States District Court
District of Massachusetts

| | |
|---|---|
| William Serrano, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No. |
| ) | 16-11808-NMG |
| Sean Medeiros, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM & ORDER**

**GORTON, J.**

In September, 2008, a Worcester County Superior Court jury convicted William Serrano ("Serrano" or "petitioner") of home invasion and four lesser included offenses. He was sentenced to 20 to 22 years in prison.

Serrano petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He advances four constitutional violations that allegedly deprived him of a fair trial with due process of law. The first two stem from a missing 911 tape, the second a failure to give a jury instruction on self-defense and the third the improper admission into evidence of medical records.

**I. Background**

Petitioner's conviction arose out of an alleged home invasion in Worcester, Massachusetts in August, 2007. At trial, the prosecution and defense presented competing narratives centering on the conflicting testimony of Serrano and the alleged victim, Russell Harms ("Harms").

**A.   Harms' Account of Being Assaulted**

Harms testified that, on August 13, 2007, he answered the door of his Pleasant Street apartment in Worcester, Massachusetts and was confronted by a large masked man. The man punched and beat Harms with a two-by-four, sending him through his coffee table. During the struggle, the mask came off the assailant's face and Harms identified the attacker as Serrano. The assailant took Harm's wallet, removed his money and threw it on the floor. When the police arrived, they noticed cards scattered on the floor including a Massachusetts ID card belonging to Serrano. Harms used the card to identify Serrano as his assailant.

**B.   Serrano's Alternate Account**

According to Serrano, on August 13, 2007, he was at a local bar and left with two men to buy marijuana. The men took him to an apartment complex on Pleasant Street. They told Serrano to wait in the foyer. When he attempted to pay for the marijuana the men lunged for his wallet and proceeded to assault Serrano.

Harms ran down the stairs and began to beat Serrano with a two-by-four. One of the assailants fled while Harms and the other assailant took Serrano's wallet and ran upstairs.

One week later, still suffering from injuries as a result of the attack, Serrano went to the hospital. Serrano had heard that there was a warrant out for his arrest and he called 911 intending to self-surrender. After the 911 call an officer came to the hospital to speak with Serrano and he surrendered on the outstanding warrant the following day.

**C.    Serrano's Trial**

In a pre-trial motion, Serrano sought to compel the prosecution to provide a record of his 911 call. Initially, the Worcester Police Department could find no record of petitioner's call. As a rebuttal witness at trial, Officer Michael Freidhoff ("Freidhoff") testified that an officer is always dispatched when a 911 call comes in and that he found no report or dispatch call involving Serrano. In closing, the prosecution focused on the 911 call and officer dispatch discrepancies to impeach Serrano's credibility, concluding

> The Commonwealth's case is believable and credible. Russel Harms, believable and credible. Michael Freidhoff, believable and credible. The defendant's testimony is not . . .

Serrano unsuccessfully moved for a jury instruction on self-defense. He maintained that any injuries he may have

caused to Harms were inflicted while Serrano defended himself from the assault in the foyer.

Finally, Serrano claims that medical statements and records used to impeach him on cross-examination were inadmissible hearsay and in violation of the Confrontation Clause.

Serrano was convicted of home invasion, armed assault in a dwelling, armed robbery while masked, breaking and entering in the daytime with intent to commit a felony and assault and battery by means of a dangerous weapon.

After his conviction, Serrano made a public records request regarding the missing 911 call.  A record of that call was then located and provided to appellate counsel.

## II.  **Procedural History**

Serrano was found guilty at trial and sentenced in September, 2008.  In September, 2010, petitioner moved for a new trial.  An evidentiary hearing was held and petitioner's motion was denied in August, 2011.  A further motion for reconsideration based on new appellate decisions was denied in April, 2013.

On appeal, Serrano raised six claims: 1) deprivation of his Sixth Amendment right to a public trial, 2) insufficient evidence of armed home invasion and armed assault within a dwelling, 3) error in refusal to give a self-defense instruction, 4) representation by the Commonwealth that no 911

call occurred, 5) erroneous admission of medical records and 6) ineffective assistance of counsel. The Massachusetts Appeals Court ("MAC") affirmed his conviction and denied petitioner's motion for new trial in April, 2015. See Massachusetts v. Serrano, 87 Mass. App. Ct. 1114 (Table op.), 2015 WL 1526072 (2015). Petitioner filed a timely application for further appellate review, raising claims regarding the 911 call, a self-defense instruction, medical records and the right to a public trial. The Massachusetts Supreme Judicial Court ("SJC") denied certiorari in June, 2015.

In September, 2016, Serrano filed this petition for a writ of habeas corpus under 28 U.S.C. § 2254.

### III. Legal Standard

A federal court sitting in habeas corpus is not obliged to re-examine state-court determinations of state-law issues but rather "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Factual findings made by state courts on direct review are therefore entitled to a presumption of correctness and interpretations of state law are binding. 28 U.S.C. § 2254(e)(1).

When the basis for a petitioner's application for a writ of habeas corpus was adjudicated on the merits in state court, the petition will be granted only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established Supreme Court precedent if "the state court applies a rule that contradicts the governing law set forth" in Supreme Court cases or if the facts before the state court are materially indistinguishable from a Supreme Court decision but the state court nevertheless arrives at a different result. Williams v. Taylor, 529 U.S. 362, 405–06 (2000).

A decision represents an "unreasonable application" of Supreme Court precedent if the state court "identifies the correct governing legal rule . . . but unreasonably applies it to the facts" of the particular case. Id. at 407–08. In both instances, the applicable legal principle must be clearly established in a holding by the Supreme Court and cannot appear in dicta or be based upon the holdings of lower federal courts. Id. at 412.

## IV. 911 Recording

Both the trial court and MAC treated the suppression of the 911 tape and the testimony of Officer Freidhoff as one legal

-6-

theory implicating <u>Brady</u> v. <u>Maryland</u>, 373 U.S. 83 (1963) and <u>Napue</u> v. <u>Illinois</u>, 360 U.S. 262 (1959). Petitioner does not present his theory with analytic clarity. The two theories are best understood as distinct and this Court will analyze them as such.

### A. Evidence suppression under <u>Brady</u>

Serrano argues that the nondisclosure of his 911 call by the prosecution constituted prejudicial error in violation of <u>Brady</u> v. <u>Maryland</u>, 373 U.S. 83 (1963). Respondent rejoins that the prosecution at trial did not use the 911 tape directly to impeach Serrano and that the evidence offered by the 911 tape is inculpatory rather than exculpatory.

The Fourteenth Amendment of the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. In <u>Brady</u>, the Supreme Court announced that

> the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.

<u>Brady</u>, 373 U.S. at 87.

A new trial is justified only where the suppressed evidence is material. <u>Wood</u> v. <u>Bartholomew</u>, 516 U.S. 1, 5 (1995) (<u>per curiam</u>). Evidence is "material" when a reasonable probability exists "that the result of the trial would have been different

-7-

if the suppressed documents had been disclosed to the defense." Strickler v. Greene, 527 U.S. 263, 289 (1999). The strength of impeachment evidence and the effect of its suppression is viewed "in the context of the entire record." Conley v. U.S., 415 F.3d 183, 189 (1st Cir. 2005).

To prevail on a Brady claim, petitioner must demonstrate that 1) the evidence at issue is favorable to him because it is exculpatory or impeaching, 2) the government suppressed the evidence either willfully or inadvertently and 3) prejudice ensued. Strickler, 527 U.S. at 281-82.

Petitioner requested the 911 call in pretrial discovery and litigated the issue in a motion for a new trial once the tape was discovered. The motion judge found that the Commonwealth did not intentionally suppress the 911 call and that the recording was not exculpatory. The Appeals Court adopted that reasoning. See Massachusetts v. Serrano, 87 Mass. App. Ct. 1114 (Table op.), 2015 WL 1526072 at *5 & n.9 (2015).

In the 911 call, Serrano states:

I did something the last two weeks and I know they are looking for me. I just want them to come down and get me. [I am] trying to get my hand fixed and trying to get some medication for a couple of mistakes that I made.

The MAC affirmed the motion judge's determination that no Brady violation occurred because that statement was not exculpatory, but rather inculpatory. The trial court and MAC reasoned that, even if the evidence had been disclosed, it would

-8-

not have helped petitioner.  The Court disagrees with the conclusions of both state courts.

The prosecution maintained that the "mistake" to which Serrano refers in the 911 call was his assault of Harms. Serrano, on the other hand, insists that the "mistake" was his attempt to buy marijuana.  That version is concordant with Serrano's narration of a drug-deal gone awry in which he was the victim.  A reasonable jury, in light of all the evidence and testimony presented at trial, could have accepted either interpretation.  Accordingly, the 911 tape

> could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.

Strickler, 527 U.S. at 291 (quoting Kyles v. Whitley, 514 U.S. 419, 435 (1995)).

Under such circumstances, the evidence was exculpatory.

The MAC's recognition of the inadvertence of the suppression is relevant to petitioner's "false evidence" claim, which this Court addresses below, but is of no relevance to his Brady claim.  "[I]nadvertent nondisclosure has the same impact on the fairness of the proceedings as deliberate concealment." Id. at 288.  The Worcester police found the 911 call recording that petitioner made to police after the trial.  There is no indication that the police or prosecution acted in bad faith. Nonetheless, petitioner has demonstrated that evidence was

"suppressed by the state, either willfully or inadvertently." Id. at 282.

The strength of the evidence and the effect of its suppression must be viewed in the context of the entire record. Conley, 415 F.3d at 189. The trial was, at its core, a credibility contest between Serrano and Harms. The prosecution made that clear in its closing argument, relying on the absence of both the 911 call and the required police report as crucial facts that undermined Serrano's trustworthiness. Had Serrano been provided with the 911 call before trial, Freidhoff would likely never have testified in rebuttal because the absence of a police report would have as likely reflected a breach in office protocol as a fabrication by petitioner. When at trial, the prosecution proffered Freidhoff's testimony, it did so by assuring the Court at sidebar

> We checked specifically on the day that he went to the hospital. No 911 call made, no record of any dispatch from the police to the hospital to speak to the defendant.

In response to the trial judge's question "Is there a 911 call, a report of a 911 call from the hospital?" the prosecution responded

> He searched for incident reports, as if there were a paper report generated from the 911 call, and there is no paper report. But a different person actually searched the calls. And there was no call.

The prosecution, defense and judge all perceived the importance of the 911 call to the credibility of Serrano and therefore, had it been introduced, there is a reasonable probability that the result of the trial would have been different. See Kyles, 514 U.S. at 435 (citation omitted). The evidence would have been material and its suppression was prejudicial to defendant.

The petitioner has demonstrated that his right to due process of law was violated by the government's inadvertent suppression of the 911 call recording. The state court proceedings resulted in an unreasonable application of Brady because the conclusion that the 911 call could not have been exculpatory is an unreasonable interpretation of the facts. The petition for habeas corpus will, with respect to petitioner's Brady claim, be granted.

### B. False Evidence under Napue

The Due Process Clause guarantees that

> a state may not knowingly use false evidence, including false testimony, to obtain a tainted conviction . . . [including where] the false testimony goes only to the credibility of the witness.

Napue v. Illinois, 360 U.S. 264, 269 (1959).

Although conceding that Officer Freidhoff did not state any falsehoods in his testimony, petitioner contends that he introduced "a false and misleading inference." This Court agrees with the state court that Freidhoff did not introduce

-11-

false testimony. The officer made clear that he did not search for records of the 911 call and testified only as to office protocol and the absence of an incident report. Even now petitioner does not contend that either statement is false, much less that the officer knowingly testified falsely. Cf. Abrante v. St. Amand, 595 F.3d 11, 19 (1st Cir. 2010).

Because this Court finds that the MAC did not unreasonably apply the law, the petition for habeas corpus will, with respect to petitioner's Napue claim, be denied.

## V. Self-Defense Instruction

Petitioner claims that the trial court's refusal to instruct the jury as to self-defense created an onerous burden at trial and substantially undermined his defense strategy. The fact a jury instruction is, however, incorrect under state law is not a basis for habeas relief. Estelle, 502 U.S. at 72. A due process violation arises from an imperfect instruction only when the instruction so "infected the entire trial that the resulting conviction violates due process." Cupp v. Naughten, 414 U.S. 141, 147 (1973).

This Court agrees with the state courts that the evidence, even taken in the light most favorable to the petitioner, does not support Serrano's claim that he "struck the victim with the two-by-four in self-defense," given his own testimony that he never entered the apartment or used the two-by-four. See

Serrano, 2015 WL 1526072 at *4.  This Court sees no Constitutional error, much less one that "infected the entire trial" in the omission of a self-defense instruction.

The petition for habeas corpus will, with respect to the jury instruction, be denied.

## VI. Admission of Medical Records

Petitioner insists that medical records were admitted at trial in violation of the rule against hearsay and the Confrontation Clause, rendering his trial counsel's assistance ineffective.

The finding of the MAC that defense counsel agreed to place the hospital records in evidence after they were redacted constitutes an adequate and independent state ground for its decision. See Coleman v. Thompson, 501 U.S. 722, 729 (1991).  An adequate and independent finding of procedural default bars federal habeas review in the absence of cause or prejudice attributable thereto or a fundamental miscarriage of justice. See Harris v. Reed, 489 U.S. 255, 262, 1989).  Petitioner has not shown cause to excuse the procedural default.  Defense counsel urged the jury to use the redacted medical records as corroboration for Serrano's testimony.  Counsel's representation was not so objectively unreasonable as to create a probability that "but for counsel's unprofessional errors", Serrano would

have been found not guilty. See Turner v. United States, 699 F.3d 578, 584 (1st Cir. 2012).

Finally, because the statements in the medical record were not made with the primary purpose of interrogation to prove past events potentially relevant to later criminal prosecution, they are not "testimonial" and thus do not implicate the Confrontation Clause. Davis v. Washington, 547 U.S. 813, 822 (2006).

The petition will, with respect to the inclusion of medical records, be denied.

**ORDER**

For the foregoing reasons, the petition for a writ of habeas corpus will, with respect to the Brady claim, be **ALLOWED**, but will otherwise be **DENIED**.

**So ordered.**

    /s/ Nathaniel M. Gorton\_\_\_\_\_
    Nathaniel M. Gorton
    United States District Judge

Dated May 9, 2018